**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | Case No: 1:22-cr-199-CJN |
| | : | |
| THOMAS SMITH, | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT THOMAS SMITH'S
<u>MOTION FOR IMPOSITION OF A NON-GUIDELINE SENTENCE</u>**

Comes now Defendant Thomas Smith through his attorneys, HANNON LAW GROUP, LLP, and presents this Motion for Imposition of a Non-Guideline Sentence.  Pursuant to 18 U.S.C. § 3553(a) and the United States Sentencing Guidelines, Mr. Smith respectfully requests that the Court vary from the advisory Guidelines and impose a sentence of probation and supervised release with reasonable conditions such as home detention, alcohol abuse treatment, and/or a substantial community-based service program.  Such a sentence would both be punitive and have structured rehabilitation goals.  In support of this proposed sentence, Mr. Smith respectfully request that the Court consider the following:

## I.  BACKGROUND

### A.  Current Charges

Mr. Smith was indicted on June 2, 2022, and charged with seven counts: Deprivation of Rights Under Color of Law (Counts 1 and 2); Obstruction of Justice (Count 3); Falsification of Records in Federal Investigation (Counts 4 through 6); and False Statements (Count 7).  Mr. Smith pled guilty to Count 1.  The Final Presentence Report ("PSR") calculated a Total Offense Level of 15, a Criminal History Category of II, and an advisory sentencing range of 21 to 27 months.

We note that the DRAFT Presentence Report indicated a Criminal History Category of I, since Mr. Smith had not been sentenced yet in the Carroll County criminal case.  The DRAFT Presentence Report calculated the sentencing range as 18 to 24 months.

In that regard, the DRAFT Presentence Report also noted the following:

128. **Judiciary Sentencing Information (JSIN):** During the last five fiscal years (FY2018-2022), there were 21 defendants whose primary guideline was §2H1.1, with a Final Offense Level of 15 and a Criminal History Category of I, after excluding defendants who received a §5K1.1 substantial assistance departure. For the 12 defendants (57%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 12 month(s) and the median length of imprisonment imposed was 12 month(s). For all 21 defendants in the cell, the average sentence imposed was 8 month(s) and the median sentence imposed was 7 month(s).

The final Presentence Report notes at Para. 128 that there were an insufficient number of defendants with Criminal History Category II from which to provide any sentencing data to the Court.

**B.  Unrelated State Charges**

On April 7, 2023, for an offense alleged to have occurred on October 10, 2021, Mr. Smith was charged in Maryland State Court on two misdemeanor offenses: (1) Destruction of Property (value less than $1,000) and (2) Animal Cruelty.  He was sentenced on October 20, 2023, to 36 months, with all but 18 months suspended.  The State Court ordered his sentence to be served "concurrent with any other outstanding or unserved sentence."[1]  Mr. Smith is currently

---

[1]  A copy of the Maryland judgment is attached as Exhibit 1.

serving this sentence as of December 15, 2023.[2]  Mr. Smith has recently learned that he is eligible to serve his Maryland sentence at a treatment facility to address his alcohol abuse problem.  However, if this Court sentences Mr. Smith to a period of incarceration, he would not be permitted to go to the treatment facility in Maryland and would serve at least nine months in the Carroll County Detention Center on the Maryland charge.

## II.  SENTENCING LAW

Title 18, U.S.C. § 3553(a) requires a district court to consider several familiar factors in imposing a sentence, including but not limited to "the nature and circumstances of the offense and the history and characteristics of the defendant."  The overarching requirement, the "parsimony principle," requires the district court to "impose a sentence sufficient, but not greater than necessary" to achieve the statutory goals of sentencing.  Although the district court must consider the advisory sentencing guidelines, the sentencing court must ultimately apply the § 3553(a) factors to determine the appropriate final sentence.

## III.  GROUNDS FOR DOWNWARD DEPARTURE

### 1.  Criminal History Overstated Pursuant to U.S.S.G. § 4A1.3(b)(1)

Mr. Smith respectfully requests a downward departure from a Criminal History Score of II to a score of I.  A downward departure is available under U.S.S.G. § 4A1.3(b)(1) "where reliable information indicates that the defendant's criminal history category substantially over-

---

[2]  Mr. Smith was charged with shooting his neighbor's dog.  The dog survived, and Mr. Smith was charged with two misdemeanors.  In such cases, a non-custodial sentence is typically imposed.  A review of the sentencing transcript shows that the judge seemed to focus primarily on Mr. Smith's *federal* charges when imposing the sentence that included of 18 months of imprisonment.

represents the seriousness of the defendant's criminal history or the likelihood that the defendant

will commit other crimes."  U.S.S.G. § 4A1.3(b)(1). *See also United States v. Beckham*, 968 F.2d

47, 54 (D.C. Cir. 1992).  The purpose of section 4A1.3 is:

> to allow a district court to deviate from the otherwise applicable [G]uideline range
> where a defendant's criminal history, likelihood of recidivism, or both differ
> significantly from the typical offender for whom the applicable criminal history
> category was formulated.  In other words, a district court may depart when a
> defendant's criminal past or likely criminal future removes the defendant from the
> heartland of the applicable criminal history category.

*United States v. Collins*, 122 F.3d 1297, 1304 (10th Cir. 1997).

The Sentencing Commission adopted § 4A1.3, and explained that it was designed to

"recognize[] that the criminal history score is unlikely to take into account all the variations in

the seriousness of criminal history that may occur."  *Id*.

The PSR in Mr. Smith's case calculated a Criminal History Category of II based on the

one Maryland conviction.  (PSR ¶¶ 41 - 42).  While it appears that the criminal history

calculation is correct, Mr. Smith's criminal history is more representative of someone who is in

criminal history category I as opposed to criminal history category II.  Had Mr. Smith not

received a unusually high sentence in the Maryland misdemeanor case, he would have had only

one criminal history point, with a corresponding criminal history category of I.  Under these

circumstances, it is apparent that Mr. Smith's Criminal History Category of II overstates the

seriousness of his prior criminal conduct and his likelihood of recidivism.  As reported in Mr.

Smith's Sentencing Memorandum filed under seal today, the Presentence Investigation in

Maryland reported that under the Maryland sentencing guidelines, a sentence of probation was

appropriate.

Many courts have granted a downward departure based on an overstated criminal history score.  In *United States v. Ellis*, 376 F. Supp. 2d 1177 (D. N.M. 2004), the District Court in New Mexico was faced with a similar situation as the present case.  There, the defendant was convicted of manufacturing counterfeit U.S. securities.  The PSR assigned a criminal history category of IV based on the defendant's one felony drug distribution conviction and two misdemeanor traffic violations.[3]  The court found that the criminal history score "significantly over-represents the seriousness of the defendant's criminal history and the likelihood that she will commit other crimes" especially as the traffic violations had no relation to the instant offense, and she would have received no points for them if she had been able to pay the small fines.  Further, they did not indicate any propensity to commit other crimes.  The court departed to a criminal history score of III.  *Id*. at 1178.

In *United States v. Dickmann*, 2007 WL 442397 (E.D. Wis. 2007), the defendant was charged with conspiracy to distribute more than 500 grams of cocaine.  His role consisted primarily of running errands for members of the conspiracy, for which he was usually compensated with cocaine that he used himself.  The district court held that the defendant's criminal history category of IV over-represented the seriousness of his criminal past, justifying a

---

[3]  The defendant in *Ellis* was convicted for driving with a suspended license.  She failed to pay the fine and was ordered to serve 64 days in jail.  Later, she was convicted of driving with a suspended license, failed to pay the fine, and was ordered to serve 72 days in jail.  She received three criminal history points for the felony drug distribution conviction, two criminal history points for each of the misdemeanor traffic violations, and received a two point enhancement for committing the instant offense within two years of her release from custody for one of the traffic violations.  *Id*. at 1177-78.

one-level downward departure under U.S.S.G. § 4A1.3(b)(1), where all of the previous convictions were clustered during a time when the defendant's drug use caused his life to "spiral out of control," and all of the prior convictions were for nonviolent offenses involving drug possession and petty theft and were typical of an addict's attempt to get money to buy drugs. *Id.* at *2.

In *United States v. Eisinger*, 321 F. Supp.2d 997 (E.D. Wis. 2004), the defendant was convicted of possession of ephedrine with intent to facilitate manufacture of methamphetamine. She had earlier convictions for minor shoplifting and for possession of drug paraphernalia and marijuana. *Id.* at 1006. The court held that a criminal history category of III significantly over-represented the seriousness of her criminal history and her likelihood of recidivism. *Id.* at 1007. The court noted that this was "not the sheet of the usual occupant of category III," and that the defendant's criminal history did not reveal a propensity for dangerousness or a willingness to harm others, and represented a time when she was a drug addict. *Id.* The court departed horizontally to category II and imposed a sentence of three years probation including six months of home confinement. *Id.* at 1007.

There are many other cases where the sentencing court granted a downward departure under § 4A1.3(b)(1). *See e.g., United States v. Anderson*, 955 F. Supp. 935 (N.D. Ill. 1997) (downward departure granted under § 4A1.3(b)(1) where prior convictions for drunk driving and domestic battery, though serious, were "not as serious as many of the crimes that place other defendants in Category III," especially as no injuries were caused in either case); *United States v. Wilkerson*, 183 F. Supp.2d 373, 381 (D. Mass. 2002) (defendant convicted of distributing crack

cocaine granted departure from category III to II where he had no convictions for crimes of violence but mostly drug and motor vehicle offenses); *United States v. Wilkes*, 130 F. Supp.2d 222, 239-40 (D. Mass. 2001) (departing to category I where defendant, convicted on drug and money laundering charges, had only "two convictions for minor drug offenses" yet was placed in category III); *United States v. Hammond*, 37 F. Supp.2d 204, 205 (E.D.N.Y. 1999) (where defendant conspired to buy 15 grams of cocaine, court departed from category VI to III where defendant "had no history of violent behavior [and his] prior arrests resulted from minor drug crimes involving facilitation of the sale of drugs and the kind of petty criminality associated with a poor addict's attempt to acquire money for the purchase of narcotics.").

Mr. Smith respectfully requests a downward departure from a Criminal History Score of II to a score of I.  This would result in an advisory sentencing range of 18 to 24 months.  Should the Court deny a downward departure under U.S.S.G. § 4A1.3(b)(1), Mr. Smith respectfully requests that the Court still consider this factor in its analysis under § 3553(a).  District courts may impose a sentence below the Guidelines range through either a "departure" or "variance."  *See United States v. McKinnie*, 21 F.4th 283, 289 (4th Cir. 2021).

**2.  Susceptibility to Abuse in Prison Under U.S.S.G. § 5K2.0**

Until his arrest in the present case, Mr. Smith was a licensed law enforcement officer with the U.S. Capitol Police in Washington, D.C.  When fashioning his sentence, Mr. Smith respectfully requests the Court to consider the inherent and unique risk to him as a former law-enforcement officer, which causes him to be susceptible to abuse in prison.  A court can depart from the applicable Guidelines range if: "in the case of offenses other than child crimes and

7

sexual offenses, the court finds . . . that there exists an aggravating or mitigating circumstance." U.S.S.G. § 5K2.0(a)(1)(A).

In *Koon v. United States*, 518 U.S. 81 (1996), the United States Supreme Court held that there was no abuse of discretion in granting a downward departure to police officers convicted of civil rights violations because of their vulnerability in prison.  The Court rejected the Government's position that susceptibility to abuse in prison could *never* be considered, and explained that the "Commission did not see fit, however, to prohibit consideration of physical appearance in all cases, nor did it address the broader category of susceptibility to abuse in prison."  *Id*. at 107.

Other courts have reached the same conclusion.  *See e.g, United States v. LaVallee*, 439 F.3d 670 (10th Cir. 2006) (district court did not abuse discretion in granting two-level departure based on former prison guard's susceptibility to abuse in prison); *United States v. Slager*, 2018 U.S. Dist. LEXIS 6382, *72 (D. S.C. 2018) (variance granted for former sheriff's deputy and former sheriff because of susceptibility to abuse in prison); *United States v. Volpe*, 78 F. Supp. 2d 76, 84 (E.D.N.Y. 1999), aff'd in part, dismissed in part, 224 F.3d 72 (2d Cir. 2000) (two-level downward departure for former police officer based, in part, on his status as police officer would expose him to "abuse at the hands of other prisoners or segregation to avoid such abuse.").

Mr. Smith respectfully requests that the Court consider his susceptibility to abuse in prison due to him being a former law enforcement officer.  Should the Court decline to grant a downward departure under U.S.S.G. § 5K2.0(a)(1)(A), Mr. Smith respectfully requests that the Court still consider this factor in its analysis under § 3553(a).

**3.  Victim Misconduct Under USSG § 5K2.1.**

The Supreme Court recognizes that, "Victim Misconduct is an encouraged ground for departure." *Koon*, 518 U.S. at 105.  This departure should be applied when the victim's wrongful conduct contributed significantly to provoking the offense behavior. USSG § 5K2.10.  Mr. White was speeding and driving without a license.  Mr. White was also severely intoxicated on opioids, no doubt contributing to the seizure he suffered.  His conduct on the motorcycle in the middle of Georgetown near midnight is the conduct of many that vexes the City and proves an obstacle to peace on the streets.  Any police officer from any law enforcement agency would have been well within the law to follow Mr. White to obtain his tag number for further investigation and possible prosecution.  Nor is Mr. White a stranger to such reckless conduct, as our Sentencing Memorandum reports his citation for street racing in Prince George's County.  Should the Court decline to grant a downward departure under U.S.S.G. § 5K2.0(a)(1)(A), Mr. Smith respectfully requests that the Court still consider this factor in its analysis under § 3553(a).

## IV. § 3553(a) FACTORS

**A.  Nature and Circumstances of the Offense**

 Mr. Smith pled guilty to Count 1 of the Indictment, Deprivation of Rights Under Color of Law, in violation of 18 U.S.C. § 242.  As discussed in some detail in Mr. Smith's Sentencing Memorandum filed today under seal, the facts of the case bear very little resemblance to the type of constitutional misconduct the statute was intended to criminalize.  The fulcrum of this count is the Government's so-far successful use of law enforcement pursuit policies to prove police misconduct.  But for the adoption of this theory in *United States v Sutton* Crim. Case No. 21-cr-

9

598-PLF (D.D.C.) and *United States v. Clark*, Crim. No. 20-cr-151-CJN (D.D.C.), Mr. Smith's

conduct might be viewed as merely negligent.

**B.  History and Characteristics**

Mr. Smith is a 46 year old alcoholic.  We adopt the History and Characteristics contained

in the Sentencing Memorandum filed today under seal in support of this motion.

**C.  Purposes of Sentencing – Section 3553(a)(2) Factors**

Title 18 U.S.C. § 3553(a)(2)(A) - (D) instructs a sentencing court to consider the

following  "purposes of sentencing" when determining a sufficient sentence:

**1.  Just Punishment/Promote Respect for the Law**

Mr. Smith recognizes that he committed a serious offense.  However, the sentence

imposed should be one that promotes respect for the law and provides just punishment.  "Respect

for the law is promoted by punishments that are fair, however, not those that simply punish for

punishment's sake." *United States v. Stern*, 590 F. Supp.2d 945, 956-57 (N.D. Ohio 2008).  "[A]

sentence of imprisonment may work to promote not respect, but derision, of the law if the law is

viewed as merely a means to dispense harsh punishment without taking into account the real

conduct and circumstances involved in sentencing." *Id*. (quoting *Gall*, 552 U.S. at 54).

Punishment takes on many forms and this Court has at its disposal every sentencing

option in framing a just sentence for Mr. Smith, including the 1-2 days of time served for the

period of his time in custody for sentencing, followed by a period of supervised release, a period

of home detention, and probation that includes alcohol and mental health treatment.  The

requested sentence of probation in this case can accomplish the goals of both punishment and

deterrence.  To be sure, even a sentence of straight probation on a felony offense is not a "gift" or a "free pass."  It is a punitive sentence with real consequences and significant restrictions. The Supreme Court has specifically recognized that probation is a substantial punishment:

> We recognize that custodial sentences are qualitatively more severe than probationary sentences of equivalent terms.  Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty.  Probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court.  They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking.  Most probationers are also subject to individual "special conditions" imposed by the court.

*Gall v. United States*, 552 U.S. 38, 595-96 (2007).

The Seventh Circuit echoed these thoughts in affirming a probationary sentence which was well below the advisory Guidelines of 46 to 57 months.  *See United States v. Warner*, 792 F.3d 847, 857-60 (7th Cir. 2015).  In that case, the court affirmed a sentence of probation for a 69-year-old defendant who was a first-time offender, whose probation placed restrictions on his movement and activities, and required him to perform at least 500 hours of community service.

Mr. Smith respectfully requests that the Court consider a sentence of probation, with reasonable restrictions and alcohol  and mental health treatment.  Such a sentence would be reasonable and meet the requirements of the sentencing statutes.

**2.  Afford Adequate Deterrence to Criminal Conduct**

There is no justification for Mr. Smith's involvement in the present offense, but the mere fact of Mr. Smith's prosecution and conviction will deter others from engaging in similar conduct.

11

**3.  To Protect the Public From Further Crimes/Recidivism**

Regarding the potential for recidivism, the Sentencing Commission's own studies show that Mr. Smith's history and characteristics make him a low risk for recidivism.  In its report, *Recidivism Among Federal Offenders: A Comprehensive Overview*[4], the Commission set out numerous variables and calculated the "Reincarceration Rates" for those variables.  For all of the relevant variables (with the exception of Acceptance of Responsibility), Mr. Smith falls at or near the lowest percentages of recidivism.[5]  His age, education, and other relevant variables indicate that he will not commit offenses in the future.

**D.  Collateral Consequences – Loss of Law Enforcement Credentials**

Mr. Smith asks the Court to also consider the collateral consequences of his conviction. Because he pled guilty to this offense, he will no longer be able to work for any law enforcement organization or agency.  Because the offense is a Class C Felony, he will no longer be able to own or possess a firearm, which means he will never be able to work as an armed security guard, as he has in the past.   Since the decision in *United States v. Booker*, 543 U.S. 220 (2005), many courts have concluded that significant collateral consequences justify a variance from the advisory guideline range.  For instance, the loss of a teaching certificate and state pension was a proper basis for a thirty-six-month reduction in a sentence.  *See United States v. Pauley*, 511 F.3d 468 (4th Cir. 2007) (variance based on devotion to family and profession, loss of teaching

---

[4]  Available at: http://www.ussc.gov/research/research-publications/recidivism-among-federal-offenders-comprehensive-overview.

[5]  A copy of the Reincarceration Rates is attached as Exhibit 2.

certificate and state pension, potential for rehabilitation, and a low chance of recidivism).  The

Second Circuit affirmed a variance that was based on the fact that the "conviction made it

doubtful that the defendant could pursue his career as an academic or translator, and therefore the

need for further deterrence and protection of the public is lessened because the conviction itself

already visits substantial punishment on the defendant."  *United States v. Stewart*, 590 F.3d 93

(2d Cir. 2009).  Similarly, a judge in this District approved a variance resulting in a one-year

probationary sentence, based in part because of "the potentially devastating collateral

consequences of a criminal conviction, including it being an impediment to future employment."

*United States v. Jaime*, 2017 WL 398314, at *3 (D.D.C. 2017).[6]

   Since 2007, Mr. Smith has worked in the law-enforcement industry or as an armed and

unarmed security guard.  A collateral consequence of the present conviction will be that he can

never be employed in that field again.  Mr. Smith asks the Court to consider this when

determining his sentence.

---

[6] Other District Courts have varied downward based on the collateral consequences of a conviction.  *See e.g., United States v. Olis*, 2006 WL 2716048, at *13 (S.D. Tex. 2006) (court varied downward from 151 to 188 months, to a sentence of 72 months based on "the chastening effect of years in prison, the attendant negative publicity, the loss of his job and accounting and law licenses . . . ."); *United States v. Wachowiak*, 412 F. Supp.2d 958 (E.D. Wis. 2006) (below-guidelines range where defendant's "future career as a teacher was ruined" and "the guidelines failed to account for the significant collateral consequences defendant suffered as a result of his conviction"); *United States v. Samaras*, 390 F. Supp.2d 805 (E.D. Wis. 2005) (below guideline sentence, in part, because "as a consequence of his conviction and sentence, defendant lost a good public sector job, a factor not supported by the guidelines"); *United States v. Ranum*, 353 F. Supp. 2d 984, 990-91 (E.D. Wis. 2005) (non-Guideline sentence due to "history and character of defendant" where he lost his job at bank and "would not be able to work in banking again."); *United States v. Redemann*, 295 F. Supp. 2d 887, 895-97 (E.D. Wis. 2003) (downward departure was proper because, "[i]f the circumstances of the case reveal that the purposes of sentencing have been fully or partially fulfilled prior to the imposition of sentence, a sentence within the range set forth by the guidelines may be 'greater than necessary' to satisfy those purposes").

**E.  Multi-Year History of Alcohol Abuse**

As discussed in great detail in the PSR and in the Sentencing Memorandum filed under seal today, Mr. Smith is an alcoholic and has struggled with alcohol abuse throughout his adult life.  (PSR Paragraphs 54, 55, 61, 67-70).  Although this does not excuse his actions, it is critical to understanding them and placing them in proper context.

Addiction is mitigating for much the same reasons that the Supreme Court recognized that youth is mitigating.  For example, in *Graham v. Florida*, 560 U.S. 48, 68 (2010), the Court noted that a juvenile's "transgression is not as morally reprehensible as that of an adult" (citations and internal quotations marks omitted).  Similarly, in *Roper v. Simmons*, 543 U.S. 551, 569 (2005), the Court noted that "scientific and sociological studies . . . tend to confirm [that a] lack of maturity and an underdeveloped sense of responsibility are found in youth more often than in adults and are more understandable among the young.  Just as there are fundamental differences between the juvenile and adult brain, so too are there fundamental differences between the addict and non-addict brain.  Because of these differences, addicts, like juveniles, tend to make "impetuous and ill-considered" decisions.  Thus, for the same reasons juveniles are generally less culpable, so too are addicts.

According to the PSR, Mr. Smith first consumed alcohol at age eight, drinking infrequently.  (PSR ¶ 67).  His drinking escalated between the ages of 13 and 17, consuming beer on the weekends.  By age 18, he was consuming three to five times per week.  Approximately a year later, he was drinking beer daily until "black out."  *Id*.  His drinking decreased after his first marriage, but when they separated in 2000, he again started drinking three to five times weekly.

After he separated from his second wife in 2007, he started drinking heavily until 2010.  That

year, he married his third wife and he began attending AA meetings and remaining sober for

short periods of time.  *Id*.  Despite his efforts with treatment programs and AA, Mr. Smith

maintained short periods of sobriety, but ultimately relapsed.  *Id*.  Mr. Smith acknowledges that

his alcohol addiction has led to "an enormous path of destruction" in his life and that of his

family and that he will need alcohol treatment for the rest of his life.  (PSR ¶¶ 68, 70).

The Guidelines do not ordinarily permit departures based on alcohol or other addictions.

*See* U.S.S.G. § 5H1.4 ("Drug or alcohol dependence or abuse ordinarily is not a reason for a

downward departure."); § 5K2.13 ("[T]he court may not depart below the applicable guideline

range if [] the significantly reduced mental capacity was caused by the voluntary use of drugs or

other intoxicants.").  However, the Guidelines are but one factor that a district court must

consider when imposing a sentence.  Notwithstanding the Sentencing Commission's views on

addiction as an appropriate basis for a departure, it is clear that addiction is a relevant and

important factor to be considered by the sentencing court pursuant to § 3553(a).

In *United States v. Garcia*, 497 F.3d 964, 972 (9th Cir. 2007), the court held that "district

courts are not prohibited in all circumstances from considering a defendant's drug addiction in

choosing a reasonable sentence."  The court explained: "Just because a consideration was

improper under the mandatory Guidelines regime does not mean that it is necessarily improper

under the advisory Guidelines regime."  *Id.* at 971.

Other courts have recognized that "addiction mitigates a defendant's culpability."  *See*

*e.g., United States v. Henoud*, 228 F. App'x 308 (4th Cir. 2007) (affirming variance where

defendant had persistent alcohol addiction and history of childhood sexual abuse); *United States v. Hicks*, 985 F. Supp. 2d 1307, 1310-11 (M.D. Ala. 2013) (varying downward for defendant whose offense was driven by an addiction to gambling and alcohol); *United States v. Chaco*, 2012 WL 1371972, at *4 (D.N.M 2012) (varying downward because "many of [the defendant's] past crimes are related to alcohol" and "it appears he has considerable alcohol and substance abuse problems."); *United States v. Francisco*, 2012 WL 3150319, at *14 (D.N.M. 2012) (varying downward in part because alcohol "played a large role in the offense" and "treating [the defendant's] alcohol problems is an important consideration" weighing in favor of a shorter sentence).[7]

     Undersigned counsel for Mr. Smith has known him and his wife Mandy now for almost three-and-a-half years.  While counsel has experience in mental health and addition issues among police officers, his concerns for Mr. Smith are somewhat unique in counsel's experience.  Mr. Smith's alcoholism is extraordinarily persistent in his life and career.  The Court is advised that during each of the two suspensions by the USCP served by Mr. Smith for alcohol-related misconduct, Mr. Smith passed a psychological fitness for duty examination conducted by an experienced health care provider who routinely examines law enforcement officers for the

---

[7] *See also United States v. Hendrickson*, 25 F. Supp. 3d 1166, 1174 (N.D. Iowa 2014) (lower sentence for defendant who had struggled with drug addiction since age 14); *United States v. Newhouse*, 919 F. Supp. 2d 955, 992 (N.D. Iowa 2014) (varying downward from career offender guidelines for drug addict who "engaged in the drug trade to obtain drugs to feed her addiction"); *United States v. Person*, 2007 WL 984086 at *3 (E.D.Wis. 2007) (varying downward for defendant whose involvement in offense stemmed from his own drug addiction, "not from greed."); *United States v. Dikiara*, 50 F. Supp. 3d 1029, 1032 (E.D. Wis. 2014) (varying downward based on defendant's gambling addiction and her efforts to obtain treatment).

Department of Justice.  Mr. Smith suffers from multiple co-morbidities which are associated with alcoholism.  His childhood is filled with extraordinary traumatic, confusing, and developmentally impactful experiences.  He also has lived a life of evasion which almost instantly distorts his view of reality and his reporting of reality.  Mr. Smith clearly suffers from memory disorder.  Yet, he is very smart, articulate, and an excellent writer.  Mr. Smith would benefit from further neuro-psychological evaluation to ensure his recover is for the long-term.

Mr. Smith does not take lightly his conduct or the gravity and consequences of his felony conviction.  His actions are well documented in the PSR, as is his history of alcohol abuse. However, Mr. Smith's offense conduct is inextricably linked to his nearly two decade-long battle with alcohol addiction.  As a consequence, a non-Guideline sentence of probation would be reasonable and would conform to the requirements of the sentencing statutes.

**F.  Conclusion – §3553 Factors**

Mr. Smith asks the Court to take into consideration all of the information set out in this Memorandum in evaluating the sentencing factors under §3553.  Under the mandatory guidelines, a sentencing court was ordinarily required to find the existence of "extraordinary circumstances" before imposing a sentence outside of the then-mandatory guidelines range. Such a finding is no longer required as the Supreme Court held that a district court does not need to find "extraordinary" or "exceptional" circumstances to justify a non-Guidelines sentence.  *See Gall v. United States*, 552 U.S. 38, 47 (2007).  Further, "[a] sentencing judge cannot simply presume that a Guidelines sentence is the correct sentence."  *United States v. Terrell*, 696 F.3d 1257, 1261 (D.C. Cir. 2012).  Instead, with respect to each individual defendant, the court must

"evaluate how well the applicable Guideline effectuates the purposes of sentencing enumerated in [18 U.S.C.] § 3553(a)." *Id.* Mr. Smith respectfully asks this Court to evaluate the information herein and impose a sentence of probation.

## G. Totality Of The Circumstances

Finally, while we await receipt of a tape recording of Mr. Smith's sentencing by Judge Titus in Carroll County on December 15, 2023, there is no doubt that Judge Titus intended that his sentence would not interfere with this Court's determination of a sentence in this far more serious matter. Judge Titus specifically ordered that the Carroll County sentence run "concurrent with any other outstanding *or unserved sentence* and begin on 12/15/2023." (Emphasis supplied). A sentence of incarceration by this Court, even run concurrently to the Maryland sentence, would result in a longer sentence for Mr. Smith in Maryland and deprive him of the benefit of treatment at the Mulligan Recovery Center.

A non-guideline sentence of probation is warranted based on the combination of factors presented herein. In *United States v. Jones*, 158 F.3d 492, 499 (10th Cir. 1998), the district court departed from a sentencing range of 12 to 18 months, to a sentence of six months home confinement and three years probation. The departure was based on the totality of circumstances, including "collateral employment consequences, aberrant nature of the offense conduct, community service, support in the community, voluntary disclosure of offense conduct, post-offense rehabilitation, and access to rehabilitative counseling." *Id.* at 504. *See also United States v. Broderson*, 67 F.3d 452, 458 (2d Cir. 1995) (downward departure allowed where factors which individually would not warrant a departure were combined, and court concluded that this

18

"confluence of circumstances" had not been taken into account by the Guidelines).

The combination of factors presented in this Memorandum are appropriate for a downward departure or variance based on the totality of the circumstances presented herein.  A sentence of probation, with specific conditions including alcohol abuse treatment, would be reasonable and would comply with the sentencing statutes.

Dated: January 17, 2024                          Respectfully submitted,

                                                 HANNON LAW GROUP, LLP

                                                 /s/ *J. Michael Hannon*
                                                 J. Michael Hannon, #352526
                                                 1800 M Street, NW, Suite 850S
                                                 Washington, DC 20037
                                                 Tel: (202) 232-1907
                                                 Fax: (202) 232-3704
                                                 jhannon@hannonlawgroup.com

                                                 *Attorney for Defendant Thomas Smith*

# Exhibit 1



**CIRCUIT COURT OF MARYLAND FOR CARROLL COUNTY**
55 N. Court Street
Westminster, MD 21157
Clerk's Office: 410-386-8710

| | |
|---|---|
| Case Number: | C-06-CR-22-000154 |
| Tracking Number: | 207006000902 |
| Other Reference Numbers: | |
| Date Sentence Imposed: | 12/15/2023 |

**STATE OF MARYLAND VS. THOMAS J SMITH**
**DOB**    06/28/1977    **SID#**              **FBI#**

Incarcerated Individual ID#:

**COMMITMENT RECORD / ☐ CORRECTED COMMITMENT RECORD**

To: [X] Warden/Sheriff of Facility: CARROLL COUNTY DETENTION CENTER
YOU ARE DIRECTED to receive the above named defendant who has been sentenced and is committed to your custody
by **JUDGE Richard R. Titus**.  The defendant has been found guilty of:

---

**Count/Offense No.: 2    Citation Charge:** ANIMAL CRUELTY    **Art./Sec:** CR.10.604.(a)(1)(2)(3)    **CJIS Code:** 1-0500    **Sentence:** 0Y 0M 90D 0H    **Eligible for parole    Art.:    Sec:    Arrest Tracking Number:** 207006000902

---

**Count/Offense No.: 1    Citation Charge:** MAL DESTR PROP VALUE $1000+    **Art./Sec:** CR.6.301    **CJIS Code:** 3-4030    **Sentence:** 3Y 0M 0D 0H    **Suspend All But:** 0Y 18M 0D 0H    **Eligible for parole    Art.:    Sec: Arrest Tracking Number:** 207006000902

---

[  ]    **Eligible for Drug Treatment Program under HG § 8-507 for Count(s)**

---

|  |  |
|---|---|
|  | All but **18M** is/are suspended and the defendant is placed on SUPERVISED/ UNSUPERVISED probation for a period of: |
|  | Supervised Term:    **18 Months**        Unsupervised Term:    **18 Months** |
|  | commencing upon: |
| SPLIT SENTENCE | [X] Release of defendant from physical incarceration. |
|  | [ ] Release of defendant from parole, or mandatory supervision pursuant to Correctional Services Article § 7-501. |
| CHECK ONE | [ ] Pursuant to Criminal Procedure Article § 6-220, the court imposes probation before judgment, with the above sentence of confinement to be a condition of probation. |
|  | **Additional sentencing information:** |
|  | **Count #1- 3 years DOC s/a/b 18 months** |
|  | **Count #2- 90 days concurrent** |

---

The total time to be served is **18M** to run:
    [X] concurrent with any other outstanding or unserved sentence and begin on 12/15/2023 ,
    [ ] consecutive to the last sentence to expire of all outstanding and unserved sentences.
    [ ] consecutive to the sentence imposed in Case No. _____.
The defendant has been awarded ZERO credit for time served prior to and not including date of sentence (Criminal Procedure Article § 6-218).

---

In accordance with Criminal Procedure Article, §§ 11-701 to 11-727, defendant to be registered as a:

---

NO court cost(s) have been waived due to indigency.
[ ] Commitment is for execution of previously suspended sentence after defendant was found in violation of probation.
[ ] Sentencing modification.  This commitment supersedes commitment issued on: N/A

---

ATTACHMENTS INCLUDE:
**Statement of Charges**
**Crime Victim Notification Form**
Other:

CC-DC-CR-028 (Rev. 10/2023)                    Page 1 of 2                    12/15/2023 2:11 PM

**State of Maryland vs. Thomas J Smith**

**Case Number: C-06-CR-22-000154**

**Tracking Number: 207006000902**

Restitution of                    To:                                                By: _____
                                                                                              Date
                                                          Order ☐ attached   ☐ to follow
                                          Appeal bond set at $0.00

Truly taken from the record of this court.        12/15/23
Witness my hand and the seal of this court    _____    _____
this date:                                                    Date                              Clerk/Judge

# Exhibit 2



# Recidivism Among Federal Offenders: A Comprehensive Overview

UNITED STATES SENTENCING COMMISSION

**Reincarceration Rates Across Selected Variables**

*Criminal History*

| | Total | N | % |
|---|---|---|---|
| **Total** | 25,431 | 6,266 | 24.6% |
| **Criminal History Category** | | | |
| CHC I | 13,581 | 1,897 | 14.0% |
| CHC II | 3,084 | 737 | 23.9% |
| CHC III | 3,616 | 1,189 | 32.9% |
| CHC IV | 1,996 | 868 | 43.5% |
| CHC V | 1,121 | 554 | 49.4% |
| CHC V | 1,923 | 986 | 51.3% |
| **Criminal History Points** | | | |
| 0 | 10,600 | 1,296 | 12.2% |
| 1 | 2,973 | 600 | 20.2% |
| 2 | 1,251 | 303 | 24.2% |
| 3 | 1,838 | 434 | 23.6% |
| 4 | 1,361 | 401 | 29.5% |
| 5 | 1,041 | 355 | 34.1% |
| 6 | 1,277 | 442 | 34.6% |
| 7 | 693 | 263 | 38.0% |
| 8 | 741 | 322 | 43.5% |
| 9 | 708 | 326 | 46.1% |
| 10 | 463 | 215 | 46.4% |
| More than 10 | 2,400 | 1,281 | 53.4% |
| **Career Offender/Armed Career Criminal Status** | | | |
| No Career Offender/Armed Career Criminal | 24,798 | 6,012 | 24.2% |
| Career Offender/Armed Career Criminal | 633 | 254 | 40.1% |

**Reincarceration Rates Across Selected Variables**

*Offense Level and Offense Type*

| | Total | N | % |
|---|---|---|---|
| **Final Offense Level** | | | |
| 1 to 8 | 3,020 | 631 | 20.9% |
| 9 to 10 | 1,598 | 320 | 20.0% |
| 11 to 12 | 1,972 | 536 | 27.2% |
| 13 to 16 | 3,981 | 1,034 | 26.0% |
| 17 to 21 | 5,283 | 1,488 | 28.2% |
| 22 to 25 | 3,676 | 934 | 25.4% |
| 26 to 30 | 3,214 | 744 | 23.2% |
| 31 to 43 | 2,580 | 546 | 21.2% |
| **Federal Offense Type** | | | |
| Drug Trafficking | 10,591 | 2,475 | 23.4% |
| Firearms | 3,244 | 1,258 | 38.8% |
| Fraud | 3,450 | 514 | 14.9% |
| Robbery | 1,100 | 443 | 40.3% |
| Larceny | 994 | 225 | 22.6% |
| Immigration | 891 | 272 | 30.5% |
| All Other | 5,159 | 1,079 | 20.9% |

## Reincarceration Rates Across Selected Variables

*Offense Characteristics*

| | Total | N | % |
|---|---|---|---|
| **Weapon Enhancement** | | | |
| No Weapon Enhancement | 22,932 | 5,550 | 24.2% |
| Weapon Enhancement | 2,499 | 716 | 28.7% |
| **Aggravating Role** | | | |
| No Adjustment | 23,789 | 5,994 | 25.2% |
| +2 Levels | 872 | 154 | 17.7% |
| +3 Levels | 315 | 46 | 14.6% |
| +4 Levels | 439 | 67 | 15.3% |
| **Mitigating Role** | | | |
| No Adjustment | 22,276 | 5,693 | 25.1% |
| -2 Levels | 2,010 | 442 | 22.0% |
| -3 Levels | 232 | 34 | 14.7% |
| -4 Levels | 447 | 92 | 20.6% |
| **Acceptance of Responsibility** | | | |
| No Adjustment | 2,372 | 524 | 22.1% |
| -2 Levels | 7,297 | 1,664 | 22.8% |
| -3 Levels | 15,723 | 4,066 | 25.9% |

**Reincarceration Rates Across Selected Variables**

*Sentences Imposed*

| | Total | N | % |
|---|---|---|---|
| **Sentence Type** | | | |
| Probation | 4,754 | 624 | 13.1% |
| Prison | 20,575 | 5,620 | 27.3% |
| **Length of Sentence** | | | |
| Up to 6 Months | 1,048 | 169 | 16.1% |
| 6 to 11 Months | 762 | 180 | 23.6% |
| 12 to 23 Months | 3,655 | 1,015 | 27.8% |
| 24 to 59 Months | 8,023 | 2,293 | 28.6% |
| 60 to 119 Months | 4,552 | 1,283 | 28.2% |
| 120 Months or More | 2,521 | 676 | 26.8% |
| **Sentence Relative to the Guideline Range** | | | |
| Within Range | 15,680 | 4,021 | 25.6% |
| Above Range | 197 | 83 | 42.1% |
| 5K1.1 Departure | 5,112 | 1,132 | 22.1% |
| Other Government Sponsored Below Range | 520 | 137 | 26.4% |
| Non-Government Sponsored Below Range | 2,134 | 460 | 21.6% |
| **Length of Supervised Release** | | | |
| No Supervised Release | 121 | 35 | 28.9% |
| Less than 2 Years | 627 | 144 | 23.0% |
| 2 Years | 1,736 | 421 | 24.3% |
| 3 Years | 11,097 | 3,361 | 30.3% |
| 4 Years | 1,793 | 396 | 22.1% |
| 5 to 9 Years | 5,068 | 1,242 | 24.5% |
| 10 or More Years | 124 | 19 | 15.3% |

*Appendix A-3*

# Reincarceration Rates Across Selected Variables

*Offender Characteristics*

| | Total | N | % |
|---|---|---|---|
| **Age at Sentencing** | | | |
| Younger than 21 | 1,226 | 528 | 43.1% |
| 21 to 25 | 4,737 | 1,679 | 35.4% |
| 26 to 30 | 4,746 | 1,382 | 29.1% |
| 31 to 35 | 3,895 | 994 | 25.5% |
| 36 to 40 | 3,347 | 738 | 22.1% |
| 41 to 50 | 4,569 | 707 | 15.5% |
| 51 to 60 | 2,125 | 187 | 8.8% |
| Older than 60 | 741 | 42 | 5.7% |
| **Age at Release** | | | |
| Younger than 21 | 398 | 142 | 35.7% |
| 21 to 25 | 2,986 | 1,137 | 38.1% |
| 26 to 30 | 4,325 | 1,392 | 32.2% |
| 31 to 35 | 4,584 | 1,246 | 27.2% |
| 36 to 40 | 3,762 | 882 | 23.4% |
| 41 to 50 | 5,551 | 1,108 | 20.0% |
| 51 to 60 | 2,732 | 281 | 10.3% |
| Older than 60 | 1,048 | 69 | 6.6% |
| **Gender** | | | |
| Male | 20,758 | 5,560 | 26.8% |
| Female | 4,664 | 703 | 15.1% |
| **Race/Ethnicity** | | | |
| White | 11,099 | 2,266 | 20.4% |
| Black | 8,617 | 2,531 | 29.4% |
| Hispanic | 4,512 | 1,111 | 24.6% |
| Other | 1,179 | 351 | 29.8% |
| **Level of Education** | | | |
| Less than High School | 8,656 | 2,809 | 32.5% |
| High School Graduate | 9,324 | 2,344 | 25.1% |
| Some College | 5,409 | 929 | 17.2% |
| College Graduate | 1,884 | 134 | 7.1% |