UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 1:22-cr-199 (CJN) |
| ) | |
| THOMAS SMITH, ) | |
| ) | |
| *Defendant.* ) | |

**GOVERNMENT'S OPPOSITION TO**
**DEFENDANT'S MOTION FOR IMPOSITION OF A NON-GUIDELINE SENTENCE**

The United States of America respectfully submits the following opposition to Defendant Thomas Smith's motion for imposition of a non-guideline sentence (ECF No. 44).  As explained in the government's sentencing memorandum (ECF No. 42), Smith's reckless and unconstitutional conduct calls for a guideline prison sentence.  None of Smith's arguments support a contrary result.  While nearly every part of Smith's motion is objectionable, the following opposition addresses three particularly lamentable arguments pursued by Smith that have no basis in fact or law.

**I.     The Court Should Reject Smith's Baseless Attempt to Blame the Victim**

Smith baselessly seeks to shift blame for his reckless conduct to the victim.  *See* ECF No. 44 at 9.  This argument is wholly without merit.

Smith grossly mischaracterizes the facts by accusing the victim of being intoxicated and "contribut[ing] significantly to provoking the offense behavior." *Id*.  The evidence establishes that only one party was likely under the influence on the evening that the offense occurred: on-duty U.S. Capitol Police Officer Thomas Smith.  The government is unaware of any objective evidence suggesting that the victim was intoxicated at the time of the crash.  The facts reveal that the victim, while at the hospital following the collision, was provided a prescription for naloxone in tandem

1

with narcotic medications ***to treat the pain he suffered as a result of being hit by a police cruiser.*** Any allegation by Smith that the prescription for naloxone suggests that it was administered because the victim was intoxicated is preposterous.

Even if Smith's claims were true, they would not support the application of U.S.S.G. §5K2.10. Smith notes that this provision applies only "if the victim's wrongful conduct contributed significantly to provoking the offense behavior." U.S.S.G. §5K2.10. But Smith makes no reference to the explicit factors listed in §5K2.10 to determine if the provision is applicable. These include, among other things: "any efforts by the defendant to prevent confrontation;" "the danger reasonably perceived by the defendant;" "the danger actually presented to the defendant by the victim;" and "the proportionality and reasonableness of the defendant's response to the victim's provocation." *Id.* It is obvious why Smith does not reference these factors. They plainly cut against any application of this provision to Smith's reckless conduct (even if Smith's baseless claims were true).

Finally, as Smith highlights in his sentencing memorandum, Smith was trained in the proper law enforcement techniques for responding to traffic infractions, including conducting traffic stops of individuals who were potentially operating under the influence. Even if Smith believed that the victim was intoxicated (which he was not), Smith was well-versed in the proper techniques for notifying the Metropolitan Police Department (MPD), engaging in a proper (*i.e.,* not reckless) pursuit, and executing a lawful traffic stop to further investigate whether W.W. was operating under the influence. Instead, Smith—who *himself* was likely under the influence at the time—violated the Constitution, ignored his duties, and disregarded his training by hitting W.W. with his police cruiser at a high rate of speed and then fleeing the scene without rendering aid. Attempts to shift blame for that conduct to the victim should not be entertained.

## II. The Court Should Reject Smith's Baseless Attempt to Ignore His Own Criminal Conduct

Smith seeks a downward departure from his accurate Criminal History Score of II. Taken as a whole, Smith's argument on this front basically amounts to: if something totally different had happened, then a different result would be justified. But based on Smith's actual conduct, his criminal history score aptly reflects his personal history and the danger to society that he presently poses.

Smith's request is rooted in U.S.S.G. §4A1.3. That provision allows for a downward departure only "if reliable information indicates that the defendant's criminal history category *substantially over-represents* the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." U.S.S.G. §4A1.3(b)(1) (emphasis added). Notably—and perhaps indicative of the rarity with which this provision is meant to be applied—the guidelines mandate that a court applying the departure "specify in writing…the specific reasons why" the demanding standard is met. *See* U.S.S.G. §4A1.3(c)(2).

Smith's conduct in Maryland unambiguously supports his Criminal History Score of II. Smith's contrary argument seems to rely entirely on the claim that he "received a[n] unusually high sentence in the Maryland misdemeanor case." *See* ECF No. 44 at 4. But this argument ignores Smith's offense conduct in Maryland, the Maryland court's findings, and the demanding standard set out in §4A1.3.

Smith shot his neighbor's dog and then seemingly lied about it. He was prosecuted in Maryland for doing so. He was convicted at trial. He was then sentenced for his conduct. On January 18, 2024, the government obtained a recording of Smith's sentencing hearing in Maryland. The government has provided a copy of that recording to defense counsel. Though there is insufficient time to create a transcript of the hearing for the Court's convenience, the hearing is

3

illuminating, and the government will provide the Court with a copy of the recording if it would like.

Smith's state trial and sentencing was overseen by Associate Judge Richard Titus of the Carroll County Circuit Court. Prior to sentencing, Judge Titus reviewed and took judicial notice of Smith's guilty plea and statement of offense in this federal case. As is being done here, during his state court sentencing Smith tried to explain away his reckless conduct in Maryland by emphasizing his alcoholism. Judge Titus noted many similarities in Smith's conduct underlying his federal and state offenses, and Smith's attempts to downplay his culpability in both forums. For example, Judge Titus stated:[1]

> *"…Your chasing someone, hit him, and just drive away… in that [federal] case, the biggest thing I took away from the case that you are facing a judge next month for is, again, someone who is going to blame what's occurring on alcohol or substance abuse issues is not going to have the wherewithal to sit there and take off and go back to the motor-pool to try to falsify records to say it wasn't me driving. . ."*
>
> *"…You are somebody based on your training and experience know better, number 1. But, number 2, I think you think that you are smarter and that you're going to get away with it and somehow make the court conclude that this is all brought on by either childhood trauma, by alcohol, or something else, and I just don't accept it. . ."*
>
> *"…I am sympathetic to what you have put your family through as far as drinking. [In reference to shooting the dog:] I don't accept that drinking is what caused this to occur. My concern about you is that you are in a situation where you think that you are above the law, that it doesn't apply to you, or you can get away with things. . ."*

Judge Titus then went on to note how the fact that Smith shot his neighbor's dog made his Maryland case far *worse* than the standard malicious destruction of property cases he sees in state court for things like breaking an inanimate object. In applying an 18-month sentence, Judge Titus

---

[1] The quotes represent the government's best attempts to transcribe the Maryland sentencing hearing recording. They are not official or certified transcripts.

noted that: "This is not a probation case.  From my perspective, there is a danger to the public…I do not accept that it's because of alcohol."

Judge Titus could not have been any clearer.  Smith's 18-month sentence in Maryland reflects serious and dangerous criminal conduct that is separate and apart from his federal offense (which also reflects recklessly dangerous conduct and contempt for the rule of law).  His Criminal History Score of II appropriately captures reality.  There is no factual or legal basis to depart downward from it.

As noted in Smith's motion, there remains a question of whether Smith's federal sentence will run concurrent or consecutive to his state sentence.  In its sentencing memorandum, the government explained why the sentences should run consecutive.  *See* ECF No. 42 at 17-21.  The recently obtained recording from Carroll County further supports the conclusion that this decision will be left to this Court's discretion, and it cannot be bound by the Maryland matter one way or another.

Towards the end of the state hearing, Judge Titus said:

*"To the extent I don't know the interplay between federal and state.  I am not going [to] try and suggest that this has to be served consecutively.  It can be concurrent with any federal sentence.  That's my intention in this matter."*

But this statement was made after Judge Titus repeatedly went out of his way to clarify his understanding that any such decision would be up to the sound discretion of the federal sentencing judge.  Judge Titus stated:

*". . .You're going to be dealing with your own issues in the federal system as well. That's for my colleague in DC to decide, not me. . ."*

*". . .Whatever sentence the judge in federal court in DC chooses to impose, that's up to him. . ."*

5

### III. Police Officer's Who Violate the Constitution and Criminal Laws are Not Entitled to Special Treatment

Smith also argues that a downward departure is warranted because his history as a former law enforcement officer makes him susceptible to abuse in prison. *See* ECF No. 44 at 7-8. Smith's argument is a common one asserted by law enforcement officers convicted of civil rights offenses, and courts throughout the country have rejected this argument. *See, e.g.*, *United States v. Rok*, 71 Fed.A'ppx 150 (3d Cir. 2003) (Defendant police officer not entitled to downward departure because he was a police officer and therefore more susceptible to abuse in prison); *United States v. Winters*, 174 F.3d 478, 486 (5th Cir. 1999) ("To allow a departure on the basis that [the defendant] is a law enforcement officer would thwart the purpose and intent of the guidelines."); *United States v. Colbert*, 172 F.3d 594, 597-98 (8th Cir. 1999) (upholding district court's refusal to depart downward because defendant was a police officer); *see also United States v. George*, No. 19-4841, 2021 WL 5505404 (4th Cir. Nov. 24, 2021) (unpublished *per curiam* opinion holding a probationary sentence for police officer convicted of Section 242 was procedurally and substantively unreasonable).

Smith's situation is consistent with those cases where courts have refused to depart or vary because of a defendant law enforcement officer's claim of susceptibility to abuse in prison. In fact, the Sentencing Commission surely considered the possibility that some defendants convicted of violating Section 242 would be law enforcement officers, and the Commission applied greater, not lesser, sentences for such crimes. *See* U.S.S.G. §2H1.1(b) (applying a six-level increase if a civil rights offense was "committed under color of law").

### IV. Conclusion

The government strenuously opposes Smith's motion for an imposition of a non-guideline sentence in this matter. The conduct at issue is serious. Smith, and no one else, is to blame for his

6

actions. His criminal history appropriately reflects a pattern of violent recklessness and points to a sense that Smith believes he is above the law. A guideline prison sentence is appropriate. The Defendant's motion should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
DISTRICT OF COLUMBIA

*/s/ Timothy Visser*
TIMOTHY VISSER
Bar No. 1028375 (DC)
Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia
Fraud, Public Corruption, and Civil Rights Section
601 D. Street, NW
Washington, D.C.  20530
Phone No: (202) 815-2358
Email: Timothy.Visser@usdoj.gov


KRISTEN CLARK
ASSISTANT ATTORNEY GENERAL
CIVIL RIGHTS DIVISION

*/s/ Sanjay Patel*
SANJAY PATEL
Bar No. 6272840 (IL)
Trial Attorney
Criminal Section – Civil Rights Division
U.S. Department of Justice
4 Constitution Square
150 M Street, NE – 7.121
Washington, D.C. 20530
Phone No: (202) 307-6188
Email: Sanjay.Patel@usdoj.gov